**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| VANESSA GUADALUPE ESPINOZA, § <br> INDIVIDUALLY AND AS § <br> REPRESENTATIVE OF THE § <br> ESTATE OF MARTIN W. PRIETO § <br> § <br> *Plaintiff,* § <br> § <br> VS. § <br> § <br> SIEMENS INDUSTRY INC. § <br> AND ABB INC. AKA ABB DE, INC. § <br> § <br> *Defendants.* § | CA NO. _____ <br><br><br><br><br><br> JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Vanessa Guadalupe Espinoza (Individually referred to herein as "VANESSA" and collectively with MARTIN as "Plaintiff"), Individually and as Representative of the Estate of MARTIN W. Prieto ("MARTIN") and complains of SIEMENS INDUSTRY INC. ("SIEMENS") and ABB, INC. aka ABB DE INC. ("ABB"), and shows the Court the following:

### I. Introduction

1. As Workers' Compensation subscribers, MARTIN's employers enjoyed the protections from an employee's common law claims for injuries or death occurring during the course and scope of the employee's work responsibilities that are afforded by the Workers' Compensation Act, except as to those claims involving the death of an employee caused by an employer's intentional or grossly negligent conduct. TEX. LAB. CODE §408.001. VANESSA is MARTIN's widow and estate representative, and she initially brought and resolved her gross negligence claims in the 133rd District Court of Harris County, Texas against MARTIN's Texas based employers, Jindal Saw USA, LLC, Jindal Saw Limited, JSW Steel (USA) Inc., and YES Employees Solutions, Inc. (erroneously named herein as Yes!Solutions, LLC, Unique Staffing, Inc., A&C Staffing Inc.). Through those proceedings Plaintiff was able to identify

SIEMENS and ABB as the designers, manufacturers and/or distributors of the component parts that ran and/or operated the furnace quencher which Plaintiff believes contributed to and proximately caused Martin's untimely death and against which Plaintiff brings this lawsuit.

## II. Nature of Action

2. MARTIN was 40 years of age when he suffered a fatal crush injury (identified on his death certificate as "mechanical asphyxiation due to crushing by industrial machinery") while working on his employer's heat-treating equipment/machinery called a "heat treat furnace" ("furnace"). At the time of MARTIN's death, VANESSA lived with MARTIN for a total of over 11 years, engaged for 9 years and married the last two and a half years of their life together, and has suffered economic and non-economic damages as a result of MARTIN's fatal injuries and death. MARTIN was Vanessa's sole source of financial support, from which she provided for her children. VANESSA brings this lawsuit for wrongful death and survivor damages. VANESSA brings this action against SIEMENS and ABB for their negligence and gross negligence that proximately caused MARTIN's death.

## III. Jurisdiction and Venue

3. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and SIEMENS and ABB are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4. Personal jurisdiction over SIEMENS and ABB is proper because SIEMENS and ABB have, and continue to, engage in business in Texas.

5. SIEMENS and ABB designed, manufactured and/or distributed the furnace's quencher and/or its component parts.

6. There are sufficient minimum contacts between SIEMENS and ABB and the State of Texas.

7. SIEMENS and ABB purposefully availed themselves of the privilege of conducting business in the State of Texas.

8. The furnace that killed MARTIN was designed manufactured, assembled and/or installed with SIEMENS' and ABB's component parts at 1411 FM565 South, Baytown, Texas.

9. On information and belief, SIEMENS and ABB have filed affirmative claims in the courts of the State of Texas.

10. On information and belief, SIEMENS and ABB have employees in the State of Texas.

11. Given the foregoing contacts, SIEMENS and ABB can reasonably anticipate being sued in the State of Texas.

12. This Court's exercise of personal jurisdiction over SIEMENS and ABB will not offend traditional notions of fair play and substantial justice.

13. Accordingly, this Court has specific personal jurisdiction over SIEMENS and ABB.

### IV. Parties

15. Plaintiff is a resident of Harris County, Texas.

16. Defendant SIEMENS INDUSTRY INC. is a foreign for-profit corporation authorized to conduct business in the State of Texas. This Defendant may be served through its registered agent, CT CORPORATION at its registered address of 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136 USA. SIEMENS INDUSTRY INC. has agreed to accept service of process via email through its counsel, Andrew Chamberlin/Joseph Cohen.

17. Defendant ABB Inc. aka ABB DE Inc. is a foreign for-profit corporation authorized to conduct business in the State of Texas. This Defendant may be served through its registered agent, CT CORPORATION at its registered address of 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136 USA . ABB, INC. has agreed to accept service of process via email through its counsel, Mr. James Kimbell.

## V.     Facts

18. December 7, 2018 started off as a normal day for MARTIN working at Jindal Saw USA (Jindal) located at 1411 FM565 South, Baytown, Texas. MARTIN was the maintenance supervisor of Jindal's furnace. MARTIN worked at Jindal when the June 7, 2012 purchase Order was made for the purchase of the furnace, while the furnace was constructed at the Jindal facility and when the furnace was commissioned and brought on-line on August 15, 2014. The furnace had not been on-line for 1.3 years up to 3 days prior to MARTIN's death because it was taken off-line for economic reasons. At the time of MARTIN's death, the furnace was in substantially the same condition as it was when it was originally placed on-line and into service by Jindal with SIEMENS' and ABB's component parts, and no modifications had been made.

19. That Purchase Order identified SIEMENS and ABB as designers, manufacturers and/or distributors of the furnace's two (2) most critical component parts. SIEMENS was identified as the entity that designed, manufactured and/or distributed the SIMATIC S7-300 that operated the furnace's main control panel/console and remote-control panels/consoles, and the hydraulic driven quencher. ABB was identified as the entity that designed, manufactured and/or distributed the motor(s) that operated the furnace and/or it hydraulic driven quencher that were run by the SIEMENS SIMATIC S7-300.

20. SIEMENS' and ABB's component parts operate the quencher, the bath and the drop cage that holds the product and lowers the product into the bath for a 10-minute cooling. The cage will not come back up until the ten (10) minutes expires or is manually operated from the control room to come up, and it does not have an auto-reverse mechanism to bring it up if it strikes something on the way down into the bath. The below illustrations show the furnace quencher, drop cage, bath, and rollers/conveyor belt.



The cage is in the "up" position and drops into the white foamy bath below when the product on the rollers trips the sensors, telling the gage to drop into the bath.



The red arrow points to the top beam of the cage that came down onto MARTIN as he was kneeling on the rollers just outside of the lower yellow line, leaning into and over the area depicted by that same yellow line to weld. That entire cage drops into the quenching bath, shown clearly above as the white foaming liquid.

21. MARTIN was welding on the furnace quencher after he went into the control room and told the operator that he was going to weld on the furnace quencher and instructed the furnace operator to turn the furnace off and make sure it stayed off. Whether the furnace operator did not properly turn the furnace off or whether the furnace was turned back on prematurely, SIEMENS' and ABB's component parts did not have safety equipment, failure detection, alarms, warning systems and/or operational systems to warn MARTIN at the quencher end of

the furnace that it was in fact on or had been turned back on. Nor did the component parts have an entrapment protection system or mechanism. Unknowingly welding on the furnace, MARTIN inadvertently tripped a dual laser detection apparatus on the quencher that should not have been in the on mode, and automatically triggered the lowering operation of the "cage" portion of the quencher onto MARTIN's upper back and pinning him against the conveyor rollers he was kneeling on. Before MARTIN's coworkers could manually lift the cage off of him, MARTIN suffered crush injuries and asphyxia and died an excruciating painful and agonizing death trapped by the cage against the rollers above the quencher. Because SIEMENS' and ABB' component parts did not have safety equipment, failure detection, alarms, warning systems, an entrapment protection system or mechanism and/or operational systems to warn MARTIN that the sensors were on, that he had tripped the sensors and that the "cage" portion of the quencher was activated and going to come down on him, MARTIN did not know he had about a second to move out of the way.

22. The furnace and quencher were generally "open and exposed" so that workers could easily climb into the furnace and quencher for any necessary repairs. The component parts that operated the furnace and quencher had a poor design that allowed for an inadvertent and manual triggering of the system even when the conveyor was not operating, by tripping laser detection beams that were designed to "read or detect" when product was about to enter the next stage and hydraulicly drop the cage into a space that a worker could be working to perform repairs.

23. In spite of the high degree of risk associated to the use and operation of a device of this nature, the component parts were designed and installed with no requirement or instructions that "ALL POWER" to the furnace and quencher be disconnected while working on it. There were no warnings posted of such requirements, no training of personnel utilizing the furnace and quencher of same, no cameras or other devices to immediately convey hazards or entrapment

issues to a control room, no requirements that deactivation devices be attached to or located immediately adjacent to the furnace and quencher, or other requisite warnings. The component parts' design did not require confirmation of control room line of sight to the furnace and quencher, and there were no cameras to detect any hazards or entrapment issues nor other emergency preparedness contingencies. And yet the SIEMENS' and ABB's distributed and installed the component parts with those hazards fully exposed and deficiencies readily observed, and wholly failed to take any remedial measures to reduce the risk to workers such as MARTIN.

## VI.   Causes of Action:

### Count I - Negligence & Gross Negligence

24. Plaintiff repeats and re-alleges each allegation contained above.

25. SIEMENS and ABB had the duty and responsibility to not only to design products that do what they are supposed to do, but also and more importantly to do so protecting the people working in, on and/or around them. SIEMENS and ABB had the duty of ordinary care, that is, the duty to use that degree of care that a reasonably prudent component part manufacturer would use under the same or similar circumstances to avoid harm to others. SIEMENS and ABB breached that duty by failing to include in their respective component parts a single alarm or other guarding device for the protection of the people working in, on and/or around the furnace and quencher, as MARTIN was at the time of his death. While SIEMENS and ABB did not include one single alarm or guarding device in their respective component parts to protect people, it did include multiple alarms to alert the furnace operator of problems with the product process.

26. SIEMENS and ABB were responsible for the safe design and construction of the defective component parts which killed MARTIN. They were in charge of the installation, operation, training, and warnings involved in use of the furnace and quencher that were operated by their component parts. They were responsible for locations of safety equipment, failure detection,

alarms, warning systems and operational systems for the defective furnace and quencher that were operated by their component parts. However, in spite of these legal obligations SIEMENS and ABB installed a computer system and motors that they knew or should have known had major system and operational deficiencies, all of which combined to result in the chain of events leading to the horrific incident in which MARTIN was crushed at the quencher while attempting to effectuate a repair.

27. SIEMENS and ABB knew or should have known that the system as designed posed a very high risk of injury or fatality for anyone working on, in and/or around it, and that high risk of injury or fatality was exacerbated by the total lack of safety equipment, failure detection, alarms, warning systems and operational systems discussed herein. SIEMENS and ABB had a duty to advise the manufacturer of the furnace and quencher that their components had a total lack of safety equipment, failure detection, alarms, warning systems and operational systems discussed herein.

28. Plaintiff sustained injuries and damages because of SIEMENS' and ABB's individual and collective negligence and gross negligence which include but are not limited to the following:
    a. failure to design and manufacture the furnace's component parts to comply with applicable safety regulations, standards, customs, and practices;
    b. failure to design and manufacture the furnace's component parts to provide adequate safety equipment;
    c. failure to design and manufacture the furnace's component parts for safe operations;
    d. failure to provide requisite training for safe operation of the furnace;
    e. failure to provide proper instruction for safe operation of the furnace and quencher;
    f. failure to design and manufacture the furnace's component parts that were OSHA compliant for safe operation;

g. failure to conduct adequate analyses of the component parts of the furnace and process controls prior to start-up and operation of the furnace at Jindal;

h. failure to adequately analyze and design the main control panel/console used to operate the furnace and quencher, as well as the subsystems used to operate the furnace and quencher to ensure safe operation and maintenance of the system;

i. failure to design the alarms and alarm management system to protect workers such as MARTIN;

j. failure to provide sufficient training, training materials, and warnings to ensure that the furnace could be safely operated and maintained;

k. failure to design the process controls used to acknowledge/stage product for quenching that was not hazardous and could not easily be unknowingly triggered due to its positioning, thereby exposing worker to fatal injury;

l. failure to include an auto-reverse mechanism in the component parts' design and manufacture; and

m. failure to implement recognized ISA (Instrument Society of America) and other governing safety guidelines and practices that were available prior to the incident and should have been incorporated into the controls of the furnace and quench system.

29. SIEMENS and ABB committed various acts and omissions of negligence and gross negligence, which both individually and collectively, were the proximate cause of the occurrence, death and damages sustained by Plaintiff as set forth above.

30. SIEMENS' and ABB's conduct as described herein, when viewed objectively from the standpoint of SIEMENS and ABB at the time of its occurrence involved an extreme degree of risk, considering the extreme degree of risk and probability and magnitude of the potential harm to others and of which SIEMENS and ABB had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or

welfare of others. SIEMENS and ABB consciously disregarded the safety of every man and woman working on, in and/or around the furnace, and specifically MARTIN on December 7, 2018 when he was killed. Plaintiff is entitled to punitive damages.

31. As a result of SIEMENS' and ABB's individual and collective negligence and gross negligence, Plaintiff incurred medical expenses in the past. Plaintiff lost the benefit of MARTIN's wages and lost future earning capacity. MARTIN's wife, Plaintiff lost her loving husband that day, who was also the sole provider to her children. Plaintiff is entitled to recover the loss of household services and other losses due to MARTIN's injuries and death on the date in question.

## **Count II - Product Liability and Strict Liability**

32. Plaintiff repeats and re-alleges each allegation contained above.

33. SIEMENS and ABB designed, manufactured, assembled, and/or installed their component parts in and on the furnace that MARTIN was working on when it crushed him to death, and that product was unreasonably and dangerously defective in its design and manufacturing. Plaintiff, therefore, invokes the doctrine of strict liability as enunciated in §402A of the Restatement (Second) of Torts and adopted by the Supreme Court of Texas.

34. As the manufacturer, distributor or installer of the component parts, SIEMENS and ABB had a duty to do so in a responsible and safe way so as not to cause injury to MARTIN or other persons who are working in, on and/or around the furnace.

35. SIEMENS' and ABB's component parts in the furnace rendered the furnace defective in the following respects:

    a. the furnace component parts were defectively designed, manufactured, assembled, inspected and tested from a stability and safety standpoint;

    b. the furnace component parts were generally defective in their design, manufacturing, marketing, assembly, testing and warnings because they failed to provide a safety

      mechanism to prevent the furnace from being turned on while being repaired and because they were without adequate warning regarding the furnace's ability to be turned on during repairs;

  c. the furnace component parts were generally defective in their design, manufacturing, marketing, assembly, testing and warnings because they failed to have an anti-crush sensor on the furnace quencher that crushed MARTIN;

  d. the furnace component parts did not provide OSHA compliant machine guards and safety equipment;

  e. the furnace component parts were inherently dangerous; and

  f. the furnace component parts were improperly and inadequately tested and inspected by SIEMENS and ABB.

36. It was entirely foreseeable and well known by SIEMENS' and ABB's that incidents involving this furnace, when used in the defective condition described herein where it could be turned on with someone in it as occurred with MARTIN, would take place during its normal, ordinary, and intended use. SIEMENS' and ABB's knew that if the furnace could be turned on and/or was on while someone was inside of it, serious injury and/or death would occur without warning, and SIEMENS' and ABB's knew or should have known that those consequences were substantially certain to result from it.

37. These risks and defects of their component parts in the furnace were known by SIEMENS and ABB prior to their design and manufacture of their component parts and their placement in the furnace and the furnace being placed into service, and the component parts were the proximate cause of Plaintiff's injuries and damages. SIEMENS and ABB are each liable to Plaintiff under common law and the doctrine expressed in the *Restatement (Second) of Torts*, §402A and §402B.

38. Moreover, a safer alternative design existed at the time their component parts were manufactured and were put into the furnace, and the furnace put into service. The safer alternative design of alarm and other guarding devices – which would include but not be limited to simple audible and visual alarms - to warn a person of the imminent danger of the quencher cage being signaled to drop into the bath would have absolutely prevented the risk of the MARTIN's crush injuries and resulting damages without substantially impairing the products utility. Further, the safer alternative design was economically and technologically feasible at the time the product was actually manufactured and certainly when it was installed and brought on-line by application of existing or reasonably achievable scientific knowledge.

39. The defective design, manufacture, assembly, and/or installation of the component parts installed in and on the furnace were the proximate and producing cause of MARTIN's death and damages, thus rendering SIEMENS and ABB strictly liable.

## VII. Respondeat Superior

41. The acts of SIEMENS's and ABB's employees were performed while in their employment to further SIEMENS' and ABB's business, to accomplish the objective for which the employees were hired, and within the course and scope of that employment and/or within the authority delegated to those employees.

42. Further, SIEMENS and ABB have all of the responsibilities to its' employees attended to and with the employer/employee relationship and ratified the acts of SIEMENS' and ABB's employees who had anything to do with the events made the basis of the lawsuit and are therefore liable for MARTIN's death and Plaintiff's damages under respondeat superior.

## VIII. Jury Trial Demanded

43. Plaintiff hereby demands a trial by jury and has paid the jury fee.

## IX. Notice To Preserve Evidence

44. Plaintiff repeats and re-alleges each allegation contained above.

45. Plaintiff demands that SIEMENS and ABB preserve all documents, tangible things, and electronically stored information potentially relevant to the issues in their cause, in accordance with specific notice provisions as if same was set forth herein for all purposes.

## X.     Prayer

46. Plaintiff prays for relief and judgment against SIEMENS and ABB as follows:

   a. Compensatory damages/actual damages;

   b. Consequential damages;

   c. Exemplary damages;

   d. Interest on damages (pre- and post-judgment) in accordance with law;

   e. Costs of court;

   f. Such other and further relief to which Plaintiff is entitled.

Respectfully submitted,

*/s/ Robert A. Schwartz*
BRENT W. COON
State Bar No. 04769750
Email:  brent.coon@bcoonlaw.com
ROBERT A. SCHWARTZ
State Bar No. 17869670
Email:  bob.schwartz@bcoonlaw.com
SIDNEY F. ROBERT
State Bar No.  24074968
Email:  Sidney.Robert@bcoonlaw.com
**BRENT COON & ASSOCIATES**
300 Fannin, Suite 200
Houston, Texas 77002
Telephone: (713) 225-1682
Facsimile: (713) 225-1785

**ATTORNEYS FOR PLAINTIFF**